HATHAWAY, J.
(dissenting). I join Justice CAVANAGH in his well-articulated criticisms of the majority’s conclusion that Richard and Lori Lanctoe owed no duty to plaintiff in this case involving a fall on a natural accumulation of ice and snow.[1] While the majority bemoans the fact that I do not thoroughly discuss the past versions of its “special aspects” doctrine, I agree with and will not repeat Justice CAVANAGH’S cogent and insightful criticisms with regard to this ever-evolving and elusive doctrine. I write separately to express my *495 consternation at how far this latest version of the doctrine strays from binding precedent in this state.
In this latest version, the majority holds that the “special aspects” exception to the open and obvious doctrine only permits recovery in circumstances that present a uniquely high likelihood of harm. The majority further holds that because plaintiff was not “trapped” in a building or “compelled by extenuating circumstances with no choice but to traverse a previously unknown risk,” the danger was not unavoidable or even “effectively” so. I disagree because the majority decision not only fails to follow binding precedent, it also disregards the open and obvious doctrine as set forth in 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-222. Moreover, the decision diminishes the role of juries in favor of judicial fact-finding, in direct contravention of the specific mandate of the Michigan Constitution.
First and foremost, as the majority acknowledges, Quinlivan v Great Atlantic & Pacific Tea Co, Inc[2] remains binding precedent in this state.[3] Quinlivan rejected the notion that Michigan’s northern geographic location somehow relieves a premises owner of duties owed to an invitee. In doing so, this Court looked to the common law of the state of Alaska for guidance. Quinlivan quoted Alaska’s approach with approval:
“Alaska’s climatic conditions do not metamorphize all risks arising from ice and snow conditions into reasonable risks for the business invitee. Nor are we persuaded by appellee Carr’s policy argument that in Alaska it would result in unreasonable costs to the private-commercial possessor of land to require the possessor to clear ice and *496 snow, or otherwise remedy conditions which amount to unreasonable risks of harm to its business invitees. The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee. Nor do such climatic conditions negate the possibility that the possessor should have anticipated harm to the business invitee despite the latter’s personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions.
“What acts will constitute reasonable care on the part of the possessor of land will depend on the particular variables of each case. Our decision today does not represent the adoption of a flat requirement that the possessor’s duty requires that he attempt to keep his land free of ice and snow. Dependent on the circumstances, reasonable care on the possessor’s part could be demonstrated by other reasonable acts such as the sanding of the area, or application of salt.”[4]
Moreover, Quinlivan acknowledged the rigorous duties owed an invitee. Quinlivan held that a premises owner owes a duty to an invitee to protect him or her from the hazards of natural accumulations of ice and snow. The Court held:
In our view the Alaska Court has appropriately conceived the legal duty owed by the invitor to the invitee. As that Court found the basis for its decision rooted in pre-existing Alaska law, we find that the basis for our decision is grounded in cases such as Torma [v Montgomery Ward & Co, 336 Mich 468; 58 NW2d 149 (1953)], which have recognized the rigorous duty owed an invitee. To the extent pre-existing case law authority indicated that the natural accumulation rule applied in an invitor-invitee context, that authority is overruled. For reasons adequately stated by the Alaska Court, we reject the prominently cited *497 notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation. The general description of the duty owed appearing in the Kestatement is a helpful exposition of the duty described in Torma. As such duty pertains to ice and snow accumulations, it will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.[5]
Thus, Quinlivan soundly rejected the previously held notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the Court acknowledged that a premises owner is not an absolute insurer of the safety of an invitee, the Court recognized that a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation. In order to fulfill that duty, a premises owner must take reasonable measures, within a reasonable time after an accumulation of ice and snow, to diminish the hazard of injury to invitees. As Quinlivan clearly opined, the question is one of reasonableness. The premises owner has a duty to take reasonable steps to diminish the hazard of ice and snow, and invitees have a duty to take reasonable actions for their own safety. Today’s decision fails to apply this analysis. While the majority cites Quinlivan as controlling precedent, it applies an analysis that ignores these principles. If the majority intends to overrule Quinlivan, it should do so in a forthright manner rather than claim that it is merely “clarifying” the law.
Moreover, to the extent that the open and obvious doctrine plays any role in the discussion of the Lane-toes’ duty in this case, §§ 343 and 343A of the Second *498 Restatement of Torts form the basis for Michigan’s open and obvious danger caselaw, and I see no reason to abandon the principles set forth in those sections. The Restatement contains exceptions to the so-called “no-duty” rule that the open and obvious doctrine creates. Rather than address these exceptions, the majority focuses on “special aspects.” However, as Justice CAVANAGH has astutely observed, the Restatement contains exceptions to the no-duty rule, and “these exceptions cannot be conveniently summarized by a ‘special aspects’ analysis.”[6] Instead, the exceptions as set forth in the Restatement need to be maintained as part of Michigan’s caselaw.
The relevant sections of the Restatement provide:
§ 343. Dangerous Conditions Known to or Discoverable by Possessor
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
§ 343 A. Known or Obvious Dangers
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *499 unless the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.[7]
While there is no absolute duty to warn invitees of known or obvious dangers, important exceptions emerge from the Restatement that limit the application of this general rule. The primary exception is that a premises owner is not liable unless he or she “knows or by the exercise of reasonable care” would discover or realize that invitees “will fail to protect themselves against” the danger or “unless the possessor should anticipate the harm despite such knowledge or obviousness .”[8] Thus, under the Restatement, the premises owner retains a duty to protect invitees and may still be held liable when the harm could be reasonably anticipated despite the fact that the danger is open and obvious. This exception was acknowledged in Riddle v McLouth Steel Products Corp:
Moreover, the “no duty to warn of open and obvious danger” rule is a defensive doctrine that attacks the duty element that a plaintiff must establish in a prima facie negligence case. A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. If the plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions. However, where the dangers are known to the invitee or are so obvious that the invitee *500 might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.
Once a defendant’s legal duty is established, the reasonableness of the defendant’s conduct under that standard is generally a question for the jury. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant’s breach was the proximate cause of the plaintiffs injuries, and thus, that the defendant is negligent.
If, for example, the dangerous conditions on the premises are hidden or latent, the premises owner is obliged to warn the invitee of the dangers. Defendant’s failure to warn under these circumstances may indicate a breach of the legal duty owed plaintiff. If the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care to protect the invitee from the danger. What constitutes reasonable care under the circumstances must be determined from the facts of the case. While the jury may conclude that the duty to exercise due care requires the premises owner to warn of a dangerous condition, there is no absolute duty to warn invitees of known or obvious danger s.[9]
Additionally, in applying this exception, an important principle emerges from the language of the Restatement. The Restatement clearly provides that a premises owner owes a heightened duty to anticipate possible harm to invitees. Section 343A provides that “[i]n determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land... is a factor of importance indicating that the harm should he anticipated.”[10] Thus, when a person is an invitee en *501 titled to use the premises, his or her invitee status is a factor of importance indicating that the premises owner should have anticipated the harm. This principle clearly recognizes the increased duty that the premises owner owes to an invitee and that the mere status as an invitee serves as an important factor indicating that the premises owner should have anticipated the harm. This principle requires that the premises owner anticipate harm that might occur to an invitee. It is reasonable to assume that customers will use entrances open to the public during business hours, and a premises owner is thus duty-bound to anticipate harm that might come to the business invitee who uses those entrances. The majority fails to recognize this important concept and, instead, it fashions an ill-conceived and erroneous set of rules for the application of the open and obvious doctrine.
Turning to the application of the law to this case, there is no question that the majority recognizes the dangers presented by ice and snow.[11] There is also no question that plaintiff was a business invitee who was entitled to use the premises by virtue of the membership that she bought from Fitness Xpress. The fitness facility was open for plaintiff to use and enjoy during winter months. Plaintiff fell on ice and snow in front of the only entrance to Fitness Xpress. Under the lease Fitness Xpress had signed with the Lanctoes, who owned the property, the Lanctoes were responsible for snow removal. Given these circumstances, it would not be unreasonable for a jury to find that the Lanctoes should have anticipated that plaintiff would have failed *502 to protect herself from the hazard presented by the ice and snow because there was no other method of public ingress to and egress from the business. Nor would it be unreasonable for a jury to find that plaintiff did not perceive or recognize the hazard. Conversely, a jury could also reasonably conclude that the Lanctoes took appropriate steps to diminish the hazard or that plaintiff did not take appropriate actions to protect her own safety.
Most importantly, however, these are questions of fact for the trier of fact to decide and are not properly decided by the court on a motion for summary disposition or on appellate review.[12] The right to trial by jury is a right protected by our Michigan Constitution.[13] When questions of fact exist, those questions are properly decided by the jury.[14] Thus, this Court not only errs by holding that the case is to be decided as a matter of law, the decision diminishes the role of juries, in favor of judicial fact-finding, in direct contravention of the specific mandates of the Michigan Constitution.
Finally, I share Justice CAVANAGH’S concern that today’s holding is “repugnant to the traditional jurisprudence of this Court and a grave disservice to Michigan’s citizens and visitors.”[15] Accordingly, I dissent.
Marilyn Kelly, J., concurred with Hathaway, J.

 References in this opinion to “plaintiff” are to Charlotte Hoffner and not to her medical insurer, Blue Cross Blue Shield of Michigan, which intervened as a party plaintiff.

 Quinlivan v Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244; 235 NW2d 732 (1975).

 See ante at 463-464.

 Quinlivan, 395 Mich at 259-260, quoting Kremer v Carr’s Food Center, Inc, 462 P2d 747, 752 (Alas, 1969).

 Quinlivan, 395 Mich at 260-261 (emphasis added).

 Mann v Shusteric Enterprises, Inc, 470 Mich 320, 337; 683 NW2d 573 (2004) (CAVANAGH, J., concurring in part and dissenting in part).

 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-216, 218 (emphasis omitted).

 Id. at pp 215, 218 (emphasis altered).

 Riddle v McLouth Steel Prod Corp, 440 Mich 85, 95-97; 485 NW2d 676 (1992) (emphasis added) (citations omitted).

 2 Restatement Torts, 2d, § 343A, p 218 (emphasis altered).

 This recognition is clearly noted in the majority’s statement that “[ujnfortunately, the accumulation of snow, ice, and other slippery hazards on surfaces regularly traversed by the citizens of this state results in innumerable mishaps and injuries each year.” Ante at 454.

 See Nowland v Rice’s Estate, 138 Mich 146, 148; 101 NW 214 (1904); In re Stebbins Estate, 94 Mich 304, 307-308; 54 NW 159 (1892).

 Const 1963, art 1, § 14.

 Nowland, 138 Mich at 148; Stebbins, 94 Mich at 308.

 Ante at 487.